HARPER *et al. v.* AMERICAN NAT. BANK & TRUST CO.

(*Knoxville,* September Term, 1951.)

Opinion filed March 7, 1952.

Rehearing denied June 7, 1952.

CUNNINGHAM, VAN CLEAVE & TURNER, of Chattanooga, for plaintiffs in error.

C. G. MILLIGAN, of Chattanooga, for defendant in error.

MR. JUSTICE PREWITT delivered the opinion of the Court.

This is a personal injury suit. The trial judge over-ruled a motion for a directed verdict. The case went to a jury with damages awarded to plaintiff. On motion for a new trial the verdicts were set aside, and directed verdicts were given for the defendant, on the ground that there was no actionable negligence on the part of the defendant. The Court of Appeals reversed, holding that there was sufficient evidence of negligence to carry the case to the jury. We granted certiorari, and the only question before us is whether there has been shown to be actionable negligence on the part of the defendant.

This necessitates a review of the evidence. The record shows that defendant owns a large three story build-ing situated on the southwest corner of 8th and Market

Streets in the City of Chattanooga; that the second floor of the building is occupied by two tenants, one operating the Nigal's Beauty Shop and the other a repair jewelry shop; that the third floor is leased by the defendant to a Mrs. Hough, who conducts a prayer room, and that the only entrance to the second and third floors of the building is by a stairway from the sidewalk on 8th street. About halfway up the stairway to the second floor there is a landing, at which point the stairway turns to the left forming a right angle. There are eight or nine steps between the landing and the second floor where there is a hallway, the floor of which is covered with inlaid linoleum. The stairway is 46 inches wide at the top of the stairs where there is a metal strip 1¾ inches wide used for the purpose of holding down the edge of the linoleum. Plaintiff contends that defendant had negligently permitted the metal strip to become slick and dangerous from long usage, and that it was not properly fastened down; that the inside edge, near the middle of the strip, had become warped and about ⁹⁄₁₆ths of an inch higher than the linoleum.

On the date of the accident at about 2:00 P.M. the plaintiff, Betty Harper, went to the beauty shop to have her hair shampooed and set. On leaving the beauty shop, she started to go down the stairs when she caught her shoe on the raised edge of the metal strip causing her to fall down the steps to the landing below and sustaining her injuries.

Mrs. Harper among other things testified as follows: "Q. (15) You had seen the condition of those steps when you went up there before, hadn't you? A. Yes. I hadn't noticed about the strip on top, but I'd seen the condition of the steps.

"Q. (16) Wasn't anything about the appearance of the steps to indicate or suggest to your mind that they were dangerous, was there? A. Well, I don't know. I didn't think too much about it before I fell.

"Q. (17) If you'd seen a condition there you thought was dangerous to people using the steps you'd have said something to Mrs. Higginbotham about it? A. *Well before I fell I said, 'I don't know about that strip. That would catch your foot across the top of the steps.' "*

It is shown that Mrs. Harper was familiar with the condition of the steps some time before the injuries complained of.

The proof shows that the condition of the steps had been the same since 1943. The exact condition of the steps and metal strip are shown by the photograph introduced in evidence and made a part of the record. The record further discloses that during this period of about four years that more than 100,000 people had used the stairs without injury. At the time of the injuries the plaintiff was wearing shoes with high slender heels.

In *Illinois Central Railroad Co.* v. *Nichols,* 173 Tenn. 602, 612-613, 118 S.W. (2d) 213, 217, the Court said:

"In order to impute to the owner knowledge of a dangerous thing, or place, the danger therefrom must be such as is recognized by common experience, or might reasonably be expected or anticipated by a person of ordinary prudence and foresight. Negligence consists in a failure to provide against the ordinary occurrences of life, and the fact that the provision made (here the ventilated slat floor) is insufficient as against an event such as might happen once in a life time (here that this customer for tomatoes would enter this freight car wearing a soft

and worn rubber heel and twist it between the slats, and fall through the car door) does not make out a case of actionable negligence. * * * As said by Mr. Justice Holmes, when on the Massachusetts Court, 'If men were held answerable for everything they did which was dangerous in fact, they would be held for all their acts from which harm in fact ensued. The use of the thing must be dangerous according to common experience, at least to the extent that there is a manifest and appreciable chance of harm from what is done, in view either of the actor's knowledge or of his conscious ignorance', *Com.* v. *Pierce,* 138 Mass. 165, 52 Am.Rep. 264. In harmony are the holdings in this State that to render one liable for negligence, it must be shown that the damage was the ordinary or probable consequence of the act, or omission. *Youngstown Bridge Co.* v. *Barnes,* 98 Tenn. 401, 39 S. W. 714; *East Tennessee, V. & G. R. Co.* v. *De Armond,* 86 Tenn. 73, 5 S. W. 600, 6 Am. St. Rep. 816; *Weeks* v. *McNulty,* 101 Tenn. 495, 496, 48 S. W. 809, 43 L. R. A. 185, 70 Am. St. Rep. 693.''

In *Schoonmaker* v. *Poughkeepsie Savings Bank,* 258 App. Div. 990, 17 N.Y.S. (2d) 549, 550, the Court said:

''Action for damages for personal injuries suffered by plaintiff as a consequence of a fall down a staircase in the common hall of a six family apartment house in the City of Poughkeepsie, owned and controlled by defendant.

\* \* \* \* \* \* \* \* \*

''Plaintiff claimed that her heel caught on a brass strip on a landing at the top of a flight of stairs. The condition of which she makes complaint was not

shown to be a negligent one. She herself did not discover the condition although she had washed down that portion of the staircase a few days before the accident. The most that any witness would say with respect to it was that there was a rise and elevation of the strip close to the bannister of about one-eighth of an inch. Such a condition is not negligent under the proof herein."

To the same effect is *Campbell v. Resnick,* 253 App. Div. 894, 1 N. Y. S. (2d) 890, 891. In that case the Court said:

"The only defect claimed and testified to was a crack in the board of the step, resulting in an elevation of an eighth of an inch."

In *City of Memphis* v. *McCrady,* 174 Tenn. 162, 124 S. W. (2d) 248, a concrete block of the sidewalk projected at an expansion joint 2½ inches above the adjoining block. Mrs. McCrady struck her heel against this projection, fell and was injured. The Court held there was no liability because it could not be reasonably foreseen that it would cause injury to one using the sidewalk in the exercise of reasonable care, and that a verdict should have been directed for the defendant. See also *Hood* v. *Allen,* 190 Tenn. 56, 227 S. W. (2d) 534, 16 A. L. R. (2d) 1286.

■ We are of the opinion therefore that drawing all reasonable inferences from the undisputed proof, there is no actionable negligence shown on the part of the defendant.

■ Furthermore, passing for the moment the proposition of actionable negligence, we might add that the plaintiff was guilty of such contributory negligence as would bar her recovery as a matter of law under her own testimony.

Referring again to the testimony hereinbefore quoted we have this question and answer:

"Q (17) If you'd seen a condition there that you thought dangerous to people using the steps you'd have said something to Mrs. Higginbotham about it? A. Well, before I fell I said 'I don't know about that strip. That would catch your foot across the top of the steps.'"

The accident happened in the daytime. As before stated, Mrs. Harper was very familiar with the condition of the steps and often went up and down them.

It was held in *City of Knoxville* v. *Cox*, 103 Tenn. 368, 53 S. W. 734, that where one knows the danger he must use ordinary care and he must remember the dangerous condition, and not to remember is contributory negligence if it occasions injury. *Wilcox* v. *Hines*, 100 Tenn. 538, 46 S. W. 297, 41 L. R. A. 278; *American Tobacco Co.* v. *Adams*, 137 Ky. 414, 125 S. W. 1067.

In *Standard Knitting Mills* v. *Hickman*, 133 Tenn. 43, 179 S. W. 385, 386, the Court said:

"In our opinion the trial judge and that court should have sustained the motion for such peremptory instructions, on the ground that the danger was so simple and obvious as that the employé could, at a glance, observe and comprehend for herself, and so obvious as that it was not incumbent on the employer to give her warning. Plaintiff knew that the floors were cleaned by mopping them with soapy water at intervals, and also the direction the colored woman took, in doing so, as the latter passed the machine in question."

See also *Bonawitt* v. *Sisters of Charity of St. Vincent's Hospital*, 43 Ohio App. 347, 182 N.E. 661.

The proof shows that thousands of persons passed up and down these steps annually and the defect in question was inconsequential.

It results that the judgment of the Court of Appeals will be reversed and that of the trial court affirmed.