IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 18, 2012 Session

## JACQUELINE ELAINE GREEN v. PAUL ROBERTS

**Direct Appeal from the Circuit Court for Van Buren County**
**No. 1465C     Larry B. Stanley, Jr., Judge**

---

**No. M2012-00214-COA-R3-CV - Filed October 11, 2012**

---

This is a premises liability case. Plaintiff/Appellant sustained injuries after she tripped over a steel post that was protruding just above the surface of a parking lot that is owned by the Defendant/Appellee. The trial court granted summary judgment in favor of Appellee, finding that the Appellee owed no duty to the Appellant, and that Appellant was at least 50% at fault for her own injury, thus negating her negligence claim. Discerning no error, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

J. Al Johnson, Spencer, Tennessee, for the appellant, Jacqueline Elaine Green.

B. Thomas Hickey, Jr., Chattanooga, Tennessee, for the appellee, Paul Roberts.

### OPINION

On September 4, 2009, at approximately 1:00 p.m., Appellant Jacqueline Elaine Green fell after tripping over a piece of steel that protruded above the surface of a commercial parking lot, which is owned by Appellee Paul Roberts. Mr. Roberts purchased the commercial property in 2007; the record indicates that, at the time of the incident at issue, Mr. Roberts had undertaken no repairs to the parking lot and, accordingly, it had remained unaltered since he purchased the property. Ms. Green worked in an office located on the commercial property. On the day of the incident, Ms. Green crossed the parking lot to meet her cousin, Whitney Gray, who had parked her vehicle in the parking lot. Appellant walked to Ms. Gray's vehicle without incident; she and Ms. Gray then spoke for approximately ten minutes. As Ms. Gray was leaving, Ms. Green took a step back from the vehicle and, in so doing, alleges that she tripped over the area that is the subject of this lawsuit. Ms. Green's

heel caught on a metal post that was protruding from the concrete; as a result her Achilles tendon was injured. Photographs and drawings in the record show that the 8" x 8" steel posts protrude about 3/4" from the surface of the parking lot; in fact, it appears that the posts themselves are sunk into the asphalt (or have been cut off at the base near the parking lot), and are filled with concrete, so that they are nearly flush with the surface of the lot. As a result, cars are able to drive over these protrusions without harm. There is a small area of concrete near one of the posts that appears to be cracked or crumbling. The surrounding parking lot is black asphalt. The areas where the posts are located have been concreted and are lighter in color than the surrounding areas, which are asphalt.

On September 2, 2010, Ms. Green filed a complaint in the Circuit Court at Van Buren County against Mr. Roberts. Ms. Green claimed that Mr. Roberts had acted negligently in allowing an unsafe and dangerous condition to exist on his property, and/or in failing to correct the unsafe and dangerous condition caused by steel protruding above the asphalt, or to warn against this dangerous condition. On November 3, 2010, Mr. Roberts filed his answer, wherein he denies liability and raises, as affirmative defenses, Ms. Green's comparative fault and that the alleged dangerous condition was open and obvious, thus negating his duty to warn against it.

After some discovery, on October 17, 2011, Mr. Roberts filed a motion for summary judgment, alleging that Ms. Green was at fault for her own injuries. Specifically, Mr. Roberts alleged that Ms. Green had actually walked over, around, or directly beside the protruding posts when she made her way to Ms. Gray's vehicle. In addition, Mr. Roberts alleged that Ms. Green had stepped backwards from Ms. Gray's vehicle and, consequently, was not looking where she was going at the time she fell. Moreover, Mr. Roberts argues that the area in dispute is plainly visible from several feet away and stands out from the surrounding parking lot and, in fact, is a different color from the surrounding area. Ms. Green opposed the motion for summary judgment, which was heard on December 19, 2011.

By order of January 4, 2012, the trial court granted Mr. Roberts' motion for summary judgment, specifically finding that:

> 1. There are no genuine issues of material fact that are in dispute. The Plaintiff's testimony is generally accepted by both sides as an accurate account of the incident for which she has brought suit.
> 2. The area complained of was a minor aberration in a parking lot which the Defendant owned.
> 3. The Plaintiff admits that she walked either directly over or just around this area on her way to meet a friend. She also

admits that the area was visible from a distance and she was not paying attention to where she was walking.

4. The pictures of the area indicate, as the Plaintiff said, that the place where she fell is easy to see and was not obscured by any objects.

5. Therefore, the Court finds that the area in which the Plaintiff fell was open and obvious (albeit a minor defect in the pavement).

6. The Plaintiff was owed no duty by the Defendant to warn her of the defect.

7. The Plaintiff was inattentive to the area in which she was walking.

8. The Plaintiff cannot be considered to be anything less that 50% at fault considering her testimony that the area was easy to see and that she was not paying attention to where she was walking and "just missed it." Therefore, to hold otherwise would essentially create strict liability on behalf of property owners so that any defect (however minor) on their property which causes damage would be grounds for recovery, regardless of the circumstances or the attentiveness of the injured party.

Ms. Green appeals. The sole issue for review is whether the trial court erred in granting summary judgment in favor of Mr. Roberts.

A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is therefore *de novo* with no presumption of correctness afforded to the trial court's determination. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.1997). "This Court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied." *Mathews Partners, L .L.C. v. Lemme*, No. M2008–01036–COA–R3–CV, 2009 WL 3172134, at *3 (citing *Hunter v. Brown*, 955 S.W.2d 49, 50–51 (Tenn.1977)).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8–9 (Tenn. 2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." *Id*. at 8. If the moving party's motion is properly supported, "[t]he burden of production then shifts to the

nonmoving party to show that a genuine issue of material fact exists." *Id*. at 5 (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn.1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. 56.06." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted).

When reviewing the evidence, we must determine whether factual disputes exist. In evaluating the trial court's decision, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." *Mathews Partners*, 2009 WL 3172134, at *3 (citing *Byrd*, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." *Id*. "Summary [j]udgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." *Landry v. South Cumberland Amoco, et al.*, No. E2009–01354–COA–R3–CV, 2010 WL 845390, at *3 (Tenn. Ct. App. March 10, 2010) (citing *Carvell v. Bottoms*, 900 S.W.2d 23 (Tenn. 1995)). However, if there is any uncertainty concerning a material fact, then summary judgment is not the appropriate disposition. As stated by our Supreme Court in *Evco Corp. v. Ross*, 528 S.W.2d 20 (Tenn. 1975):

> The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding the material facts. Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He [or she] is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.

*Id*. at 24–25.

A claim for negligence cannot succeed in the absence of any of the following: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; (5) proximate, or legal, cause. *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993). Duty, the first element of the claim, is the legal obligation a defendant owes to a plaintiff to conform to the reasonable person standard of care in order to protect against unreasonable risks of harm. *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn.1995). Whether a defendant owes a duty to a plaintiff in any given situation is a question of law for the court. *Bradshaw*, 854 S.W.2d at 869.

In cases involving premises liability, the premises owner has a duty to exercise reasonable care under the circumstances to prevent injury to persons lawfully on the premises. *Eaton v. McLain*, 891 S.W.2d 587, 59394 (Tenn.1994). This duty is based upon the assumption that the owner has superior knowledge of any perilous condition that may exist on the property. *See, e.g.,* *Kendall Oil Co. v. Payne*, 293 S.W.2d 40, 42 (Tenn. Ct. App. 1955). The duty includes the obligation of the owner to maintain the premises in a reasonably safe condition, and to remove or warn against latent or hidden dangerous conditions of which the owner is aware or should be aware through the exercise of reasonable diligence. *Eaton*, 891 S.W.2d at 593-94. However, our Supreme Court has held that a duty may exist even where the injury-causing condition is alleged to be open and obvious to the plaintiff:

> That a danger to the plaintiff was open and obvious does not, *ipso facto*, relieve a defendant of a duty of care. Instead, the duty issue must be analyzed with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm. The factors provided in the Restatement (Second) of Torts, § 343(A) relate directly to the foreseeability question; in short, if the foreseeability and gravity of harm posed from a defendant's conduct, even if open and obvious, outweighed the burden on the defendant to engage in alternative conduct to avoid the harm, there is a duty to act with reasonable care.

*Coln v. City of Savannah*, 966 S.W.2d 34, 43 (Tenn. 1998). Thus, the initial focus is on whether a duty exists—"only after a duty is established does comparative fault come into play." *Id.* at 42. The Court outlined several factors, which provide "balance and insight [in]to the analysis" of whether a duty exists, including: "[w]hether the danger was known and appreciated by the plaintiff, whether the risk was obvious to a person exercising reasonable perception, intelligence, and judgment, and whether there was some other reason for defendant to foresee the harm." *Id.* Whether a defendant owed or assumed a duty of care to

a particular plaintiff is a question of law for the court to decide. ***Downs ex rel. Downs v. Bush***, 263 S.W.3d 812, 819-20 (Tenn. 2008). In deciding whether a defendant owed a legal duty to a plaintiff in a particular action, the court is to determine "whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant." ***Rice v. Sabir***, 979 S.W.2d 305, 308 (Tenn. 1998) (citing ***Bradshaw v. Daniel***, 854 S.W.2d 865, 870 (Tenn.1993) (quoting W. Page Keeton, Prosser & Keeton on Torts, § 37 at 236 (5th ed.1984)).

In essence, foreseeability is the gravamen of negligence. If the injury that occurred could not have been reasonably foreseen, the duty of care does not arise, and even though the act of the defendant in fact caused the injury, there is no negligence and no liability. "'The plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within the [defendant's] power more probably than not would have prevented the injury.'" ***Doe v. Linder Constr. Co.***, 845 S.W.2d 173, 178 (Tenn.1992) (citations omitted).[1] However, since our Supreme Court's decision in ***McIntyre v. Balentine***, 833 S.W.2d 52 (Tenn.1992), the proximate contributory negligence of the plaintiff is no longer a bar to recovery. Rather, if the plaintiff's negligence is less than that of the tortfeasor, the plaintiff may recover damages reduced by a percentage of the plaintiff's own negligence. ***Id***. at 57. "While comparative fault is typically a question for the trier of fact, summary judgment is appropriate in those situations where reasonable minds could only conclude that . . . the plaintiff's fault was equal to or greater than the fault of the defendant." ***Norris v. Pruitte***, No. 01A01-9709-CV-00506, 1998 WL 1988563, at *3 (Tenn. Ct. App. Aug.24, 1998) (citing John A. Day & Donald Capparella, <u>Tennessee Law of Comparative Fault</u> 12-18 (1997)).

Traditionally, liability has not been imposed on a premises owner by courts of this state for injuries that resulted from defective or dangerous conditions that were "open and obvious." *See* ***McCormick v. Waters***, 594 S.W.2d 385 (Tenn. 1980); ***Kendall Oil Co. v. Payne***, 41 Tenn.App. 201, 293 S.W.2d 40 (Tenn. Ct. App. 1955). In cases after ***McIntyre v. Balentine***, 833 S.W.2d 52 (Tenn.1992), liability in premises liability actions has been determined according to the principles of comparative fault:

When an invitee is injured because of dangers that are obvious,

---

[1]  In a more recent opinion discussing the issue of foreseeability, the Supreme Court went on to explain that "foreseeability alone does not create a duty to exercise reasonable care." ***Downs***, 263 S.W.3d at 820. "If the risk is foreseeable, then courts should weigh the remaining factors to determine if an imposition of duty is justified. In the end, whether a defendant owed or assumed a duty of care to a plaintiff is a question of law for the court to decide." ***Downs,*** 263 S.W.3d at 820–21 (other citations omitted).

reasonably apparent, or as well known to the injured party as to the owner or operator of the premises, liability, if any, should be determined in accordance with the principles of comparative fault analysis and the general negligence law of this state.

*Cooperwood v. Kroger Food Stores, Inc.*, No. 02A01-9308-CV-00182, 1994 WL 725217 (Tenn. Ct. App. Dec.30, 1994).

In *Coln v. City of Savannah*, 966 S.W.2d 34 (Tenn. 1998), our Supreme Court held that "the duty issue must be analyzed with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm." *Id*. at 43. Moreover, our Supreme Court has held that an assumption of the risk issue should be analyzed "under the principles of comparative fault." *Perez v. McConkey,* 872 S.W.2d 897, 905 (Tenn.1994). Specifically, the *Perez* Court held that "attention should be focused on whether a reasonably prudent person in the exercise of due care knew of the risk, or should have known of it, and thereafter confronted the risk; and whether such a person would have behaved in the manner in which the plaintiff acted in light of all the surrounding circumstances, including the confronted risk." *Id*.

According to the record, in her deposition testimony, Ms. Green testified that she did not remember seeing the disputed area of the parking lot:

Q. Okay. And either you—so either you stepped over [the disputed area] or you walked right around it.
A. I must have walked around it because I don't remember seeing it.
Q. Do you think you could have seen it and walked around it and you just don't remember?
A. I do not remember seeing it.
Q. Okay. You don't remember one way or the other whether you saw it or not?
A. I think I was just—I just seen [sic] her [i.e., Whitney Gray] and wanted to go out there and see her little boy and I wasn't paying attention to where I was walking. I just missed it. I do not remember seeing it.

The instant case is similar in fact to *Young v. First Bank of Tennessee*, No. E2010–01434–COA–R3CV, 2011 WL 332700 (Tenn. Ct. App. Jan. 28, 2011). In *Young*, the plaintiff filed a premises liability action against First Tennessee Bank after she tripped over a curb in the bank's parking lot and fell. *Young*, 2011 WL 332700, *1. The plaintiff alleged

that the bank was negligent in creating or maintaining a dangerous condition. *Id*. The trial court summarily dismissed the action upon finding that the plaintiff could not prove that the bank owed her a legal duty and that the bank's alleged failure to warn was not the cause in fact of her injury. *Id*. at \*2. On appeal, we affirmed the finding that the bank did not owe a legal duty to the plaintiff because "the curb was visible and gave rise to no duty to warn and further that the *plaintiff's failure to look where she was going was the cause of her accident rather than breach of any duty to warn that, theoretically, may have existed.*" *Id.* at \*4 (emphasis added). In the case of ***Herbison v. Hansen Chrysler Plymouth, Inc.***, No. 01A01-9710-CV-00594, 1998 WL 485668, at \*3 (Tenn. Ct. App. Aug. 19, 1998), the plaintiff tripped over a metal strip, which was embedded in concrete in a doorway, and filed a premises liability action against the store owner. In affirming the grant of summary judgment in favor of the defendant/store owner, this Court noted that:

> [T]he sole cause of the injury was the culpable inattention of the injured party. Even though the attention of the injured party may have been diverted by his search for the parts department, he had adequate opportunity to familiarize himself with the nature of his pathway in his previous visits and, on the day of his injury as he approached the doorway from the parking lot. This conclusion renders unnecessary any consideration of comparative negligence.

*Herbison*, 1998 WL 485668, at \*3 (Tenn. Ct. App. Aug. 19, 1998); *see also **Stewart v. Seton Corp.***, No. M2007-00715-COA-R3-CV, 2008 WL 426458 (Tenn. Ct. App. Feb. 12, 2008) (affirming the grant of summary judgment in favor of defendant upon finding that the defendant had no duty to the plaintiff who failed to look where she was going).

In another case, ***Norfleet v. Pulte Homes***, No. M2011-01362-COA-R3-CV, 2011 WL 5446068 (Tenn. Ct. App. Nov. 9, 2011), the plaintiff sued a home builder for injuries she sustained in a fall after failing to notice a four-inch step down into the living room of a model home. The home builder filed a motion for summary judgment arguing that it owed no legal duty to the plaintiff due to the open and obvious nature of the step. The trial court granted summary judgment and the plaintiff appealed. This Court affirmed, applying the summary judgment standard outlined in ***Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1, 8–9 (Tenn. 2008), the same summary judgment standard applicable in this case. The Court held that summary judgment was appropriate because the home builder owned no duty to protect the plaintiff from the specific type of harm she suffered. Specifically, the Court concluded that the step was visible to the plaintiff and "it was not 'reasonably foreseeable' that [the plaintiff] would fail to pay attention to where she was walking." *Norfleet*, 2011 WL 5446068, at \*5.

In another recent case, **Foster v. Wal-Mart Stores East, LP**, No. 3–11–0367, 2012 WL 3027843 (M.D. Tenn. July 23, 2012), the United States District Court for the Middle District of Tennessee affirmed the grant of summary judgment in favor of defendant Wal-Mart in a premises liability case in which the plaintiff tripped over a pallet that was placed at the end of an aisle. Relying on cases such as **Herbison**, *supra*, and applying the **Coln** standard, the District Court held:

> However, unlike more typical conditions when customers slip and fall on spills on a floor, there is nothing to suggest that any customer ever fell or would fall on a pallet adjacent to an endcap. The lack of foreseeability and gravity of harm is further bolstered by the fact that the plaintiff was standing within feet of the pallet and, at the time she tripped and fell, she was not looking at merchandise on high shelves but rather was moving from her initial location at the endcap to the other side of the endcap. The plaintiff simply failed to look down as she quickly moved to the other side of the endcap. The plaintiff has failed to meet her burden to show that the defendant would reasonably foresee that a customer would trip over a pallet located in close proximity to her. Under the circumstances set forth above . . . any risk to the plaintiff from the placement of the pallet in the aisleway should have been obvious to a customer exercising reasonable perception, intelligence, and judgment.

**Foster**, 2012 WL 3027843, at \*4 (citation omitted); *see also* **Easley v. Baker**, No. M2003-02752-COA-R3-CV, 2005 WL 697525 (Tenn. Ct. App. March 24, 2005) (affirming summary judgment in favor of defendant on comparative negligence basis in concluding that, even if defendant premises owner owes a duty, plaintiff owes a duty to see what is in plain sight). From Ms. Green's testimony, above, it is undisputed that she failed to appreciate the condition of which she complains.

It is also undisputed in this case that the area at issue was distinguishable from the surrounding area by color, i.e., the area with the posts was concreted and was much lighter than the surrounding asphalt. According to Ms. Green's own testimony:

> Q. Okay. So the condition itself, you can see without any problems, correct?
> A. You can see the white, yes.
> Q. Okay. And you can see that from several feet away?
> A. You can.

Q. But what I'm saying is from a distance, you can see that white-colored area and I'm not sure it's white. It's just a lighter color. You agree that it's a lighter color than the surrounding area?

A. Yes.

Q. You can see that particular area stands apart and is different from the driveway and the parking space in general, right?

A. Right.

Q. There's no problem seeing that from ten or twenty feet away?

A. Right.

In the case of **Berry v. Houchens Market of Tennessee, Inc., et al.**, 253 S.W.3d 141 (Tenn. Ct. App. 2007), plaintiff slipped in a puddle of oil located in defendant's parking lot. In her discovery deposition, plaintiff testified, in relevant part that:

> Plaintiff described the oil on the ground "it wasn't no little bitty amount, it was like a puddle of oil." She described the oil as "dark black" and stated that the oil, which was darker than the gray surface of the parking lot, was clearly distinguishable from the lot. Her explanation for not seeing the oil until she was lying in it was that she was looking straight ahead and that she never looks down when she is walking.

*Id*. at 143-44. In affirming the trial court's grant of summary judgment in favor of defendant, this Court noted that, while the owner of the premises "clearly had a duty to maintain the parking lot in a reasonably safe condition, reasonable minds would not differ because of plaintiff's absolute lack of attention to where she was walking." **Id.** at 148. In other words, a plaintiff in a premises liability case has a duty to see what is in plain sight.

Also important to the instant case is the fact that the area complained of was only a minor "aberration" in the parking lot; Ms. Green does not dispute this finding by the trial court. In several cases, both the Supreme Court of Tennessee and this Court have held that recovery will not lie because of the existence of minor defects and depressions. *See **Riddell v. Great Atlantic & Pacific Tea Co***., 241 S.W.2d 406, 408 (Tenn. 1951) ("A recovery will not be allowed because of the existence of trivial holes or depressions."); **Murray v. City of Nashville**, 299 S.W.2d 859, 862 (Tenn. Ct. App. 1957) ("[T]he mere existence of trivial

-10-

depressions . . . [is] not such as to constitute actionable negligence . . . ."); ***Batts v. City of Nashville***, 123 S.W.2d 1099, 1103 (Tenn. Ct. App. 1938) ("[S]light holes or depressions which are not in the nature of traps, and from which danger could not be reasonably anticipated, are not defects for which an action will lie."); ***Rice v. Sabir***, 979 S.W.2d at 309 ("The duty imposed on the premises owner . . . does not include the responsibility to remove or warn against conditions from which no unreasonable risk was to be anticipated.").

In the instant case, the following facts are undisputed: (1) the area complained of was static in nature; (2) Ms. Green had parked in the parking lot on many occasions prior to the accident; (3) From photographs and Ms. Green's testimony, the disputed area was visible from a distance of up to eighty feet; (4) the disputed area was a different color from its surroundings; (5) Ms. Green had no recollection of seeing the disputed area, even though it was plainly visible; (6) Ms. Green stood at, or by, the area for approximately ten minutes before she fell; and (7) Appellant was stepping backwards when she fell, and was not looking where she was going.

In her appellate brief, Ms. Green attempts to rehabilitate her deposition testimony, *supra*, that she failed to see the disputed area from a distance by arguing that, although she could have seen the "area" from a distance, she could not see the protruding metal within the area, which was the cause in fact of her injury. Although cogent, Ms. Green's argument is ultimately negated by the undisputed facts. The photographs show that what could be seen from a distance was the actual raised areas created by the posts; one can see that these two areas are lighter in color and that they are, in fact, raised above the surface of the parking lot. Regardless, Ms. Green's testimony is that she failed to see any of the area, even as she walked directly past, or over it, and even though she stood near it for approximately ten minutes prior to the accident. In short, Ms. Green had no recollection of seeing any defect in the parking lot though the difference was distinguishable from up to eighty feet away. At any time during her visit with Ms. Gray, Ms. Green could have noticed what was near her feet, or she could have refrained from stepping backwards without looking where her foot would land. Moreover, because the defects complained of were small aberrations, the foreseeability and gravity of harm considerations do not support a finding of liability on the part of Mr. Roberts. Under the facts presented in this case, Ms. Green failed to establish that she was owed a duty by Mr. Roberts.[2]

For the foregoing reasons, we affirm the order of the trial court granting summary judgment in favor of Appellee. Costs of this appeal are assessed against the Appellant,

---

[2] Our decision that Ms. Green cannot show the essential element of duty renders the other basis for the trial court's ruling, specifically that Ms. Green was more than 50% at fault for her injuries, moot; thus, it will not be discussed in this opinion.

Jacqueline Elaine Green, and her surety.


 

 

_____

J. STEVEN STAFFORD, JUDGE